MORROW v. MURPHY.

1. MASTER AND SERVANT—PROFIT SHARING—PARTNERSHIP.
    A contract whereby one agrees to superintend and manage
    the business of another for a specified yearly compensation,
    together with a certain share of the net profits, does not
    make the parties partners.

2. SAME—ACCOUNTING—UNLIQUIDATED DAMAGES.·
    In fixing the amount due an employé entitled to receive
    a certain percentage of the net profits, pending actions in
    tort brought against the employer, in which the damages are
    unliquidated, and over which the employé has no control,
    cannot be taken into consideration.

3. SAME—INTEREST ON INVESTMENT.
    In estimating the amount of the profits in which the employé
    is entitled to share, the employer should not be allowed
    interest on his investment, where not provided for in the con-
    tract.

4. SAME—CUSTOM.
    A custom of charging to the expense account material and
    labor furnished to the superintendent of a manufacturing
    concern for his private use will not bind the employer unless
    he knows of it.

Error to Wayne; Frazer, J. Submitted January 4,.
1899; original opinion May 23, 1899. Rehearing (plain-
tiff's application) granted July 11, 1899; final opinion,
modifying the earlier one, October 3, 1899.

Assumpsit by George L. K. Morrow against Thomas
Murphy to recover a balance due on a contract for services.
From a judgment for plaintiff, defendant brings error.
Modified and affirmed.

Moore & Moore, for appellant.

Thomas T. Leete, Jr., for appellee.

LONG, J. Plaintiff brought suit in assumpsit against

defendant for services, claiming that he had worked for defendant for a number of years under an agreement that he should receive for his services $1,200 a year as salary, and 8 per cent. of the net profits; that the services had terminated; and that there was a balance due him of $5,000. Defendant pleaded the general issue, with notice of set-off and recoupment. The case was referred, and the referee made findings, and settled a bill of exceptions, from which it appears that, in 1889, the plaintiff entered into a contract with defendant to superintend and manage the defendant's factory, for which he was to receive $1,200 a year, and 8 per cent. of the net profits. The business was done in the name of the Murphy Iron Works. The original contract was renewed from time to time, without material change, sometimes by a new contract, and at other times by a verbal continuance of a former one, until December 31, 1896, when the contract relations ceased. When the time came for a final separation and settlement, defendant caused an inventory of the property on hand to be made. Plaintiff refused to settle on that basis, and brought this suit. The referee found that plaintiff's salary had been paid in full; that he had drawn $17,970.12 on account of profits; and that there was still due him, on net profits, the sum of $1,455.62. A bill of exceptions, with assignments of error, was settled, and filed with the report of the referee. Exceptions to the report were also filed. The exceptions were overruled by the court below, and defendant brings error.

Defendant claims here that the plaintiff cannot recover in this action, because (1) the parties were partners, the accounts unsettled, and the sole remedy is in equity; (2) it is impossible in the present suit at law to settle the accounts or fix the rights of the parties.

It is unnecessary to set out the whole contract here to determine the question whether the parties were partners. The contract recites that—

" This contract is made   *   *   *   between Thomas Murphy, proprietor of the Murphy Iron Works, of the one

part, and George L. K. Morrow,   *   *   *   of the other part, whereby the said George L. K. Morrow agrees to manage and superintend the machine and foundry business carried on by the said Thomas Murphy, under the name of the Murphy Iron Works,  *   *   *   for which the said Thomas Murphy agrees to pay the said George L. K. Morrow the sum of  *   *   *  ; also that, should Thomas Murphy desire to sell out part or the whole of the business, then this contract ceases at that time.  *   *   *   "

From the wording of the contract, the pleadings in the case, and testimony given by Mr. Murphy, it is evident that the parties did not become partners. The notice under the plea sets out that the work and labor for which the action was brought was done under a special contract or agreement in writing, by the terms of which defendant agreed to hire the plaintiff at an agreed compensation; that the plaintiff left his employment; that he neglected his duties as superintendent, and that defendant was entitled to his best mechanical ability; that, by such inattention to his duties as superintendent and manager, the business of the defendant was injured. Mr. Murphy's testimony is in keeping with this notice. The fact that the contract provides that the plaintiff should have a share of the profits does not necessarily make the parties partners. The contract simply fixes the measure of plaintiff's compensation for his services as superintendent and manager. *Stockman* v. *Michell*, 109. Mich. 349.

It appeared that three suits were pending against Mr. Murphy at the time this action was brought, and that those suits were still undetermined at the time of the report of the referee. It is contended by defendant that no settlement and adjustment of the accounts could be made, and no determination of the net profits had, until after these suits were disposed of. Two of these actions were in tort, and the damages unliquidated. In the first suit, defendant was sued in Chicago for libel. The second suit was for the unlawful discharge of an apprentice. The third suit was a case in which Mr. Murphy sued to recover on an account of $625. The defense in that case

was that the Murphy Iron Works guaranteed that the furnaces put in should be smokeless, and that they were not as guaranteed. The referee did not take these matters into consideration in fixing the amount due plaintiff on percentages. We think that the referee was correct in this. There was no indebtedness in the actions of tort, and could be none, until they were in judgment, and there was no amount which the referee could deduct from the profits. *Hill* v. *Bowman*, 35 Mich. 191. Plaintiff had no control over these suits. The contract, in effect, provides for a settlement at the end of the year, and that the percentages on accounts unpaid at the time of the year's settlement, which were contracted during the year, were to be paid as soon as such accounts were collected or paid. The referee found that there were certain accounts due and unpaid, which remained uncollected. These accounts were not determined in fixing the amount of the plaintiff's percentage, and the suits were not considered in the computation. Of the third suit, which was to recover on the account of $625, we think no competent evidence was given which would have warranted the referee in taking it into account.

It is contended that the referee charged the defendant too much for the iron castings. Castings had been sold during the year 1896 at from two to five cents per pound. The referee fixed the price at two and a quarter cents. The testimony supports this finding.

Defendant claims that the referee erred in refusing to credit him interest on the part of the purchase price of the plant paid by him. The defendant was receiving 92 per cent. of the profits as a consideration for the investment he had in the business. He also received $3,000 salary per year. We find nothing in the contract which provided for interest on the investment by the defendant, and the referee was not in error in that respect.

There is one item in the account in which we think the referee erred. He found that the plaintiff, while superintendent and manager, was indebted to the Murphy Iron

Works for material and labor furnished to him by it for his own private use to the amount of $388.19. He also found that it was the custom to charge this to the expense account; that Mr. Murphy was also indebted for material and labor furnished for his private use, but the amount could not be exactly determined. He refused to charge plaintiff this, because he says it was the custom to charge this to expense account. We think the evidence does not show that Mr. Murphy knew of any such custom, and, in fact, it appears that Mr. Murphy's private work was charged to himself. Under the contract, Mr. Murphy was entitled to 92 per cent. of this $388.19, which would amount to $357.13. This amount must be deducted from the plaintiff's judgment. Aside from this we find no error in the case. With this deduction from the judgment, it will be affirmed. Defendant will recover the costs of this court.

GRANT, C. J., MONTGOMERY and MOORE, JJ., concurred. HOOKER, J., did not sit.

### ON REHEARING.

PER CURIAM. A rehearing having been granted in this case, we have re-examined the record, and find that an error was committed in charging the plaintiff in the former opinion, *ante*, 204, in his account, the sum of $357.13. It should be but $128.25, and the judgment will be corrected in that respect.

Counsel for plaintiff contends that, in view of this deduction from the original judgment, the plaintiff should be entitled to his costs in this court. We cannot agree with this contention. The plaintiff recovered judgment and his costs in the court below. That judgment for costs will stand. The judgment will be reduced here by the $128.25, and the costs of this court awarded to the defendant. No costs on the rehearing will be allowed.