CARLOS R. ROSSI, Plaintiff and Appellant, v. PORTO RICO IRON WORKS, INC., Defendant and Appellee.

No. 6823. Argued May 7, 1937.—Decided June 17, 1937.

*Luis Tirado Géigel* for appellant. *F. Parra Capó* and *F. Parra Toro* for appellee.

Mr. Justice Travieso delivered the opinion of the court.

On March 1, 1927, the plaintiff, Carlos M. Rossi, and the defendant corporation signed a contract whereby the former undertook to manage a branch office of the defendant which the latter bound itself to maintain open in the city of San Juan for the purpose of selling and advertising its products, getting new customers, and. keeping those it already had. The contract was to last until December 31, 1928, subject to renewal, and it was given retroactive effect as from January 1, 1927. Clauses 5, 7, and 8 of the contract relate to the compensation to be paid by Rossi, and read as follows:

"(5) As compensation for the faithful performance of such work the Principals fix the sum of two hundred and twenty-five dollars ($225) monthly as the salary of the Manager of the San Juan Office, payable at the end of each month.

"  *          *          *          *          *          *          *

"(7) In consideration of the good efforts on the part of the Manager of the San Juan Office to sell the products and manufactures of the Principals, the latter bind themselves to give the Manager of the San Juan Office a share of the profits as follows:

"(A) 25 per cent of the net profits on orders solicited and secured by the Manager of the San Juan Office, and of the net profits on orders solicited and obtained by the Manager of the San Juan Office with the direct or indirect co-operation of the Main Office.

"(B) 10 per cent of the net profits on orders secured by the Main Office but with the co-operation of the Manager of the San Juan Office in personally recommending the goods to the custormers; of the net profits on such orders as, having been solicited by the Main Office, are passed on to the Manager of the San Juan Branch for him to close the deal with the customer, and of all other pending transactions and orders which, having been solicited by the Manager of the San Juan office, are passed on by him to the Main Office, it being agreed that it shall be the duty of the Manager of the San Juan Office to furnish the Main Office with all kinds of data, specifications,

quotations, etc., when so requested by the latter, and he shall not have a share in the profits on orders secured by the Main Office by making use of such information.

"(C) The Principals guarantee to the Manager of the San Juan Branch the sum of $300 as profits from the sales, as stipulated in the present clause 7, which he may collect at the rate of $25 monthly, such sum to be deducted from his share of the profits in case such share should exceed $300.

"(8) The net profits mentioned in the foregoing clause shall be computed annually as follows: The total profits on all orders mentioned in the foregoing clause shall be ascertained. From this total there shall be deducted the total expenses incurred in keeping and operating the San Juan Office; as well as in soliciting any business to be credited to the same. The respective amounts on which the Manager of the San Juan Office is to receive 25 per cent and 10 per cent of the profits shall then be ascertained. The amount obtained as net profits from the San Juan Office shall be divided accordingly, and from each portion there shall be then deducted 25 per cent and 10 per cent, respectively, corresponding to the Manager of the San Juan Office."

At the end of 1927 the Porto Rico Iron Works, Inc., sent to Rossi the following liquidation of the profits made during the year by the San Juan office:

| | | |
|---|---:|---:|
| "Gross profits during the year | | $13,069.41 |
| "Payments to be deducted | $144.27 | |
| "General expenses up to Dec. 31, 1927 | 6,989.92 | |
| "Interest at 9% annually on $13,481.45 as capital required to conduct the business of the San Juan Office | 1,213.05 | |
| "Net profits | 4,722.17 | |
| | $13,069.41" | |

From the net profits thus made, the plaintiff received as his share, in accordance with subdivision "A" of the seventh clause of the contract, 25 per cent, or $1,180.54.

On March 31, 1928, the defendant sent him another liquidation of profits and expenses corresponding to the months of January, February, and March, 1928, showing net profits realized in the San Juan office, amounting to $1,305.97. It

was alleged by Rossi that he had not received the 25-per cent share of that sum, to which he was entitled under subdivision "A" of clause 7 of the contract.

There arose differences between the parties which resulted in the present action of debt. Two causes of action were set forth in the complaint. In the first, objection was made to the sum of $1,213.05, charged as interest on the capital required to conduct the business of the San Juan office during 1927, the plaintiff claiming that such deduction from the gross profits was not agreed upon. He therefore claims a balance of $303.26, which represents 25 per cent of said $1,213.05. In the second cause of action, there was claimed the sum of $263.49, or 25 per cent of $1,305.97, representing the net profits of the San Juan office during January, February, and March, 1928, and plaintiff alleged that the said sum had not been paid to him notwithstanding his demands for payment.

Regarding the first cause of action, the defendant in his answer set up that, although it was not specifically stated in the contract that there should be deducted from the gross profits interest on the capital required to conduct the business of the San Juan office, implicitly it was so· agreed, since said interest should be considered as "expenses incurred in the management and operation of the San Juan office," pursuant to the eighth clause of the contract *ut supra*. It also set up that the plaintiff had been paid the sum of $1,180.54, which was all he was entitled to receive by way of profits "as plaintiff had consented to have the interest deducted."

With regard to the second cause of action, the defendant denied having sent to the plaintiff on March 31, 1928, a liquidation of profits made and expenses incurred during the months of January, February, and March, 1928, and on the contrary alleged that "on the aforesaid date it sent to the plaintiff an incomplete statement . . . . but that the said statement did not contain any final liquidation, because there

were some expenses that had still to be computed." It likewise denied that the plaintiff was entitled to the sum of $326.49 as profits, because the business of the San Juan office showed a loss, amounting to $694.76, during the months mentioned in the statement sent to him by the defendant.

As new matter constituting a counterclaim, the defendant alleged that on or about March 28, 1928, while the contract was still in force and in spite of the express prohibition established therein, the plaintiff, as the agent of the National Cast Iron Pipe Company, sold to José Rodríguez López some iron pipes and accessories for the price of $30,000, which the purchaser refused to pay, and thereupon the latter was sued by the said company in the U. S. District Court for the District of Puerto Rico, judgment being rendered in favor of the said company in the sum of $5,000, out of which Rossi received $1,500 as his commission to which the defendant was entitled under the contract between them.

That he likewise sold, as the agent of Sterling Pump Co., a pump to Julio Chardon, and that the order for the same was not sent through the defendant, which failed to receive its commission amounting to $500, according to its best information and belief.

The district court rendered judgment dismissing the complaint of Carlos R. Rossi and the counterclaim of the Porto Rico Iron Works, Inc., without special imposition of costs. Thereupon Rossi appealed, and he has assigned in his brief four errors. The first assignment reads thus:

██ *"First.*—The District Court erred as a matter of fact and of law in concluding from the evidence and from the contract between the parties that the first cause of action alleged in the complaint, in which a sum in addition to that allowed is claimed as extra compensation for services rendered during 1927, was insufficient."

The following is from the opinion of the district court in connection with this first assignment:

"The only controversy between the parties as to this first cause of action is that the pla'ntiff objects to the item in the liquidation

already mentioned which we reproduce and which reads as follows:
"Interest at 9 per cent per annum on $13,481.45, as capital
required to conduct the business of the San Juan
office_____ $1, 213. 05
"The court, having weighed the whole evidence, both oral and documentary, introduced by the parties in regard to clause 8 of the contract, holds that said item is correct and in accordance with the contract entered into between the parties, and the conclusion is reached by the court that the first cause of action set forth · in the complaint must be dismissed."

The brief of the appellant throws very little light and has been of little help to us in considering and deciding the legal question involved in his first assignment. We have been compelled to make a careful search of the decisions on the matter, with the result which we will state presently.

Section 1646 of the Civil Code (1930 ed.) provides that "interest shall only be owed when it has been *expressly* stipulated." It is a fact admitted by the defendant that the contract contained no agreement regarding the deduction of interest from the gross profits shown by the business of the San Juan office. Can such interest be considered as having been implicitly agreed upon, in clause 8 of the contract, as expenses incurred in the management and operation of the San Juan office? We do not think so. Subdivisions "A" and "B" of the seventh clause of the contract fix plaintiff's share of the profits at "25% of the *net profits* on orders solicited and procured by the Manager of the San Juan Office," and at "10% of the *net profits* on orders procured by the Main Office but with the co-operation of the Manager of the San Juan Office . . . .," respectively. In the eighth clause it is again stated that, "The amount obtained as *net profits* from the San Juan Office shall be divided accordingly, and from each portion there shall be then deducted 25% and 10%, respectively, corresponding to the Manager of the San Juan Office."

In *Daintrey* v. *Evans,* 148 App. Div. (N. Y.) 275, 277, the term "net profits" is defined. That case is very similar to

the one at bar. The plaintiff's predecessor in interest, pursuant to an oral agreement, was to receive a salary of $8,000 per year, in addition to 5 per cent of the net profits of the departments of which he had charge. The defendants before the said 5 per cent was computed deducted from the gross profits interest at 6 per cent on the capital invested by them in said departments. After the death of the intestate, his wife and administratrix sought to recover a balance claimed to be due to the decedent as his share of the net profits, contending that the defendants were not entitled under the agreement with the husband to deduct any interest upon the capital invested, and that the term "net profits" should not be construed as to permit such deduction. On appeal by her from an adverse judgment, it was held:

"There is no doubt that the term 'net profits,' in the absence of any special agreement defining the same, means the balance remaining after deducting the outgo from the income, *without deducting interest on the capital invested.*" (Italics ours.)

In *Paine* v. *Howells,* 90 N. Y. 660, it was said:

"*We do not think that interest upon capital is an expense to be deducted in ascertaining net profits.* Those profits themselves constitute the earnings of the capital and may exceed or fall short of the legal rate of interest. They are the product of the investment, and the capital is used, not to earn interest, but profits. The cases between partners to which we are referred are not pertinent. Where all the partners put in equal amounts of capital no question of interest arises. It comes up only to redress an inequality, and interest is allowed upon what practically is a loan. But here the plaintiff was not a partner. It was expressly agreed that he should not be, and he made his contract for a share of the net profits as compensation for his services upon the assumption that the firm capital was in the business and to be used in its conduct and to produce profits." (Italics ours.)

In *Morrow* v. *Murphy,* 120 Mich. Rep. 204, 79 N. W. 193, the plaintiff and the defendant entered into a contract whereby the former would receive for his services as superintend-

ent of defendant's factory $1,200 a year as salary, and 8 per cent of the net profits. There was nothing in the contract which provided for any deduction from the profits on account of interest on the capital invested. The case was referred, and the referee, when computing the 8 per cent to be received by the plaintiff, did not first deduct the interest on the capital invested by the defendant. The defendant claimed that the referee erred in refusing to credit him interest on the capital invested by him. The court held that in computing the share of the profits to which the employee was entitled, the principal should not be credited interest on the capital invested by him, if such interest had not been agreed upon in the contract.

In *Selz et al.* v. *Buel*, 105 Ill. 122, the firm of Morris Selz & Co. entered into a contract with Henry K. Buel for his services as their salesman for a period of four years, during which time he was to receive annually one-fifth of the net profits of the business done at the Chicago house of the defendants, to which the plaintiff had been assigned for service. By the same contract a minimum sum of $7,500 was guaranteed to him as net profits. One of the clauses of the contract provided that, "At the end of each year of said period the gross profits of the business conducted at the Chicago store of said firm shall be ascertained, and from the sum of said gross profits *shall be deducted the total expenses and losses* incurred in such year in said business, and a sum which shall be equal to one-fifth part of the residue shall be said compensation" of the plaintiff. (Italics ours.) The case was referred to a master who refused to charge to the expense account interest paid by the Chicago house on temporary loans. This was assigned as error. The court said:

". . . ., we find no provision in it which in terms authorizes such a charge, so that if warranted at all, it must be upon general business principles, or by some local or special usage, of which both contracting parties must appear to have been cognizant, and may therefore be presumed to have contracted with reference to it. . . .

Nor are we aware of any general usage or custom, having the force of law, which, under the agreement in question, would authorize charging to the expense account interest on temporary loans, . . . . Under the agreement it was clearly the duty of the appellants to furnish the capital necessary to carry on the business contemplated by the contract, and whether they had it in ready means, or would be compelled to borrow the whole or part of it, and if so, whether the loans would be for long or short periods, or whether the rate of interest would be high or low, were matters about which appellee, in a legal sense, had not the slightest interest or concern."

In the light of the decisions cited, which should be accepted as a guide in interpreting the contract now under discussion, it must be held that, contrary to the contention of the appellee, interest upon the capital necessary to conduct the business of the San Juan office can not be considered as expenses, and that therefore its deduction from the gross profits was not agreed upon either expressly or impliedly. The lower court erred in upholding the validity of such deductions.

The appellee, however, argues that, as the appellant was paid the sum of $1,180.54, it owes him nothing since the latter consented to the deduction from the gross profits of the item of "interest at 9 per cent per annum on $13,481.05 as capital required to conduct the business of the San Juan office." The appellee bases its contention on a letter from Rossi dated January 21, 1928, the pertinent part of which reads as follows:

"Regard'ng the interest, I still believe that as the same had not been charged in the liquidation of the year before last, and as it had not been agreed in 1927 that interest should be charged, it should be entirely cancelled by you; and what was agreed with your Mr. Luis Ferré, (since, in view of our conversation, the undersigned agrees with you in having the interest included in the cost of materials), was that you would revise the sum of $1,213.05 charged by you against the San Juan branch as interest, which charge I consider to be greatly excessive. If the total volume of business, including loans from the bank, exceeds half a million dollars and the total amount of interest charged by the bank is about $5,000, as

shown to me by you, the fair thing would be to charge against the San Juan Office, proportionately to its share of the business, at most ⅛ of such total, or about $600. As no account has been kept of the amount of interest chargeable to each account, the above seems to me to be the most equitable solution in the premises, especially since no such charge had been agreed upon beforehand."

The above letter has not the scope attributed to it by the appellee. In it the appellant insists that interest should be entirely eliminated, because the same had not been charged in the liquidation of 1926, and because it had never been agreed upon. And although he consents to a deduction on account of interest, he objects to the one made in the liquidation as being excessive. Since nothing was agreed upon in the contract either expressly or impliedly regarding deductions on account of interest, this letter would operate as a novation. However, as no definite agreement was reached by the parties in this respect, Rossi can not be said to have consented to a deduction of the interest. See the case of *Central Pasto Viejo* v. *Aponte,* 34. P.R.R. 849, in so far as the same is applicable to the present case.

The second assignment of error reads as follows:

"*Second.*—The lower court erred in basing its ruling in regard to the second cause of action of the complaint on the fact that the defendant did not derive any profits from the business of the San Juan office during the first quarter of 1928, whereas according to the contract between the parties the nominal profits computable on the basis of the orders secured by him is what must be taken into account for the purpose of ascertaining the extra compensation that the plaintiff should receive for his services. It likewise erred in dismiss ng the second cause of action set forth in the complaint on the ground that no profits were realized, if such finding was reached upon the evidence introduced by the defendant regarding the expenses incurred subsequent °to March, 31, 1928, which was admitted over the objection of the plaintiff."

It was alleged by the plaintiff in his second cause of action that the defendant sent to him on March 31, 1928, a liquidation of the profits realized by the San Juan office

during January, February, and March, 1928, amounting to $2,880.41, and a liquidation of the expenses during those months which amounted to $1,574.44, showing the sum of $1,305.97 as net profits of which he claimed 25 per cent, that is $326.49.

We have observed that as against this second cause of action the defendant set up, first, that the said liquidation was not final, and, second, that during January, February, and March, 1928, the business of the San Juan branch showed a loss amounting to $694.76.

Manuel A. Mayoral, secretary and head of the defendant's office, testified that in the final liquidation sent to Rossi were not included certain disbursements made for telephone service, rent, salaries, and other expenses by the San Juan office during March and April amounting to $380. As Rossi's claim in this second cause of action is confined to the months of January, February, and March, we think that the defendant has no right to deduct from the profits realized during the above months the expenses incurred during April. So that instead of $380, as the amount of such expenses, there should only be deducted from the gross profits the sum of $195.40 as the rent for March of the premises occupied by the San Juan office. Therefore, to the item of expenses appearing in the liquidation sent by the defendant to the plaintiff on March 31, 1928, there should be added the sum of $195.40, thus making a total of $1,796.84 instead of $1,574.44.

It was also stated by Mayoral that for the purpose of the final liquidation he charged the San Juan office with $275.23 as interest on the capital necessary to conduct the business of the San Juan office during the period from January 1 to April 11, 1928; that he deducted from the profits a payment of $158.51 which he made to Enrique Báez, and $1,185.40 which the business lost in an account owed by Fortuño Sellés. It is clear that if these three items were added to the above-mentioned sums of $1,574.44 and $380, the business

would show a loss amounting to $693.17 (instead of $694.76, as alleged by the defendant) during the months of January, February, and March, 1928, since the gross profits amounted only to $2,880.41. However, as interest can not be deducted for the reasons which we stated when considering the first assignment, and as the payment to Báez and loss of the Sellés account can not be deducted either for the reasons hereinafter set forth, it follows that the plaintiff is entitled, under this second cause of action, to recover the sum of $227.64 which is 25 per cent of $1,110.57, the difference between $2,880.41 (gross profits) and $1,769.84 (expenses).

Neither the item of $158.51 nor that of $1,185.40 can be deducted from the profits, because it was not agreed in the contract that Rossi would share with the defendant any losses that might be shown by the San Juan office. The contract between the parties was not a partnership contract binding Rossi, as manager, to share any losses that might be incurred in the business of his principal. If the intention of the parties had been otherwise, they would have stipulated as to losses just as they did as to profits. The first clause of the contract between them says: "The Principals will open and maintain open an office in the city of San Juan, to be engaged, etc." It was an undertaking assumed by the defendant to open said office but not one assumed by the defendant and Rossi. The profits as well as the losses, if any, were to be received or borne, as the case might be, by the defendant. A part of the profits would be paid to the manager, and it accordingly granted a 25 per cent share and a 10 per cent share in certain contingencies, but nothing was said as to losses, which are generally borne by the owner of the business, unless otherwise stipulated.

In *Mouland* v. *Harty*, 120 Misc. (N. Y.) 47, the court said:

"There were sales made in which the employer suffered a loss, which she contends should be deducted from the profits earned on other sales. That construction of the contract was accepted by the court below; and since the losses exceeded the profits, judgment was

granted to the defendant. We are not in accord with that construction of the agreement. The contract makes no mention of losses; and, concededly, it is not one of partnership or joint adventure. A share of the profits as salary (which is the situation here) does not, unless expressly stipulated, incur a liability for losses. Our view is, that whatever profits were realized on plaintiffs' sales constituted additional salary; they were not obligated, either by express terms or implication, to share the losses."

See also *McFarland* v. *Gillioz*, 37 S. W. (2d) 911.

In support of its contention, the defendant cited the following paragraph from 2 Corpus Juris 783, par. 448:

"448 (3).—By the terms of the contract of agency or otherwise, the amount otherwise due an agent may be subject to forfeiture or deduction for various reasons independent of his fraud or misconduct, as for instance where the principal has incurred losses on account of the default of the customers procured by the agents."

It immediately cited as "a case identical with the one at bar" that of *A. B. Frank & Co.* v. *Waldrop* (Tex. Civ. A.) 71 S. W. 298, also partially quoted in the footnote to the text in Corpus Juris, *supra,* thus:

"Where the contract under which an agent undertook to manage the bus'ness of his principal at a certain city for a fixed salary and percentage of the net profits contained no guaranty that the agent would make good any loss from failure of customers to pay their accounts, losses accruing from such source cannot be deducted from his fixed salary, but considered only in determining the net profits."

If instead of confining itself to a reading of the extract from the above case in Corpus Juris the defendant had read the entire opinion it would have seen that the contract between Waldrop and A. B. Frank & Co., provided that:

". . . . all losses sustained by failed accounts, and losses on goods billed from the González branch, *should be deducted from the gross profits* in estimating the additional 5 per cent." (Italic ours.)

Obviously, that case is quite distinct from the one before us.

The trial court, in our judgment, committed the second error assigned.

We do not deem it necessary to discuss the third and fourth assignments of error.

The lower court dismissed the two counterclaims set up in the answer by the defendant, and as the latter did not appeal from such pronouncement, the same was consented to.

For the reasons stated the judgment appealed from must be reversed and another rendered instead ordering the defendant to pay to the plaintiff-appellant the sum of $580.90, that is, $303.26 and $277.64 as prayed for in the first and second causes of action, respectively, with interest at the legal rate on said sum as from September 29, 1930, until fully paid, together with costs, expenses, and disbursements incurred in the present action, both in the district court and in the present appeal.

Mr. Justice Córdova Dávila took no part in the decision of this case.