CARLOS M. ROSSI, demandante y apelante, *v.* PORTO RICO IRON WORKS, INC., demandada y apelada.

Núm. 6823.—*Sometido:* Mayo 7, 1937. *Resuelto:* Junio 17, 1937.

*Luis Tirado Géigel,* abogado del apelante; *F. Parra Capó* y *F. Parra Toro,* abogados de la apelada.

EL JUEZ ASOCIADO SEÑOR TRAVIESO emitió la opinión del tribunal.

El día 1 de marzo de 1927 el demandante Carlos R. Rossi y la corporación demandada suscribieron un contrato por cuyos términos el primero se haría cargo, con el carácter de Manager o Administrador, de una oficina subsidiaria de la demandada, que ésta se comprometió a sostener abierta en la ciudad de San Juan, para la venta y propaganda de todos sus productos, conquistar nuevos clientes y conservar los que ya tenía. Se fijó como término del contrato hasta el 31 de diciembre de 1928, pudiendo renovarse, y se retrotrajo al primero de enero de 1927. La quinta, séptima y octava cláusulas del contrato se refieren a la remuneración del Sr. Rossi, y leen así:

"(5) En compensación de la fiel ejecución de este trabajo Los Principales asignan un sueldo de doscientos veinticinco dollars ($225) mensuales al Manager de la Oficina de San Juan, que deberá recibir por mensualidades vencidas.

"*     *     *     *     *     *

"(7) En compensación de las buenas gestiones del Manager de la Oficina de San Juan en la venta de los productos y manufacturas de los Principales, los Principales se comprometen a conceder al Manager de la Oficina de San Juan una participación en los beneficios, como sigue:

"(A) 25 por ciento sobre los beneficios netos de las órdenes trabajadas y obtenidas por El Manager de la Oficina de San Juan; sobre el beneficio neto de órdenes trabajadas y obtenidas por el Manager de la Oficina de San Juan, pero en las cuales ha cooperado en forma directa o indirecta la Oficina Central.

"(B) 10 por ciento sobre el beneficio neto de órdenes obtenidas por la Oficina Central, pero en las cuales el Manager de la Oficina de San Juan ha prestado su cooperación en forma de propaganda personal cerca de los clientes; sobre el beneficio neto de aquellas órdenes que habiendo sido trabajadas por la Oficina Central se endosen al Manager de la Oficina de San Juan para que cierre el negocio con el cliente, y sobre aquellas órdenes o negocios pendientes que habiendo sido trabajados por el Manager de la Oficina de San Juan, sean endosados por éste a la Oficina Central quedando entendido que

el Manager de la Oficina de San Juan está en el deber de dar a la Oficina Central toda clase de datos, especificaciones, cotizaciones, etc., cuando ésta lo solicitare y no tendrá participación en los beneficios de las órdenes que obtenga la Oficina Central haciendo uso de esta información.

"(C) Los Principales garantizan al Manager de la Oficina de San Juan un beneficio sobre las ventas según se estipula en esta cláusula núm. 7 de trescientos dollars ($300) que podrá tomar a razón de veinticinco dollars ($25) mensuales; cuya cantidad se deducirá de la participación que tenga en los beneficios en caso que dicha participación fuere mayor de $300.

"(8) El beneficio neto a que se refiere la cláusula anterior se computará anualmente en la forma siguiente: Se obtendrá el total de los beneficios de todas las órdenes a que se refiere la cláusula anterior. De ese total se deducirá el total de gastos incurridos para el sostenimiento y operación de la oficina de San Juan, así como para gestionar cualquier negocio acreditable a la misma. Se establecerá entonces una proporción entre el total de beneficios sobre los cuales tendrá el Manager de la Oficina de San Juan el 25 por ciento y aquéllos sobre los cuales tendrá el 10 por ciento. La cantidad obtenida como beneficio neto de la Oficina de San Juan se dividirá de acuerdo con esta proporción y se sacará entonces de cada cantidad obtenida el 25 por ciento y el 10 por ciento respectivamente que corresponde al Manager de la Oficina de San Juan."

Al finalizar el año 1927, la Porto Rico Iron Works, Inc., envió a Rossi una liquidación de beneficios obtenidos durante ese año en la oficina de San Juan, que lee así:

"Beneficio bruto durante el año_____                    $13, 069. 41
"Bonificaciones a deducir_____  $    144. 27
"Gastos generales hasta Dic. 31, 1927____     6, 989. 92
"Intereses al 9% anual sobre $13,481.45,
    capital necesario para conducir el ne-
    gocio de la oficina de San Juan_____     1, 213. 05
"Beneficios netos_____     4, 722. 17
                                          ─────────────
                                           $13, 069. 41"

Del beneficio neto así obtenido, el demandante recibió por su participación, de acuerdo con la subdivisión "A" de la cláusula séptima del contrato, el 25 por ciento, o sea $1,180.54

En 31 de marzo de 1928 la demandada le envió otra liquidación de beneficios y gastos habidos durante los meses de enero, febrero y marzo, 1928, en que figura un beneficio neto obtenido en la oficina de San Juan, ascendente a $1,305.97. Rossi alega no haber recibido el 25 por ciento que de acuerdo con la letra ''A'', cláusula 7 del contrato, le corresponde de esa suma.

Surgieron dificultades entre las partes, y como consecuencia de ellas, la demanda en cobro de dinero que es objeto de este pleito. Contiene dos causas de acción: en la primera se objeta el cargo de $1,213.05 por intereses sobre el capital necesario para conducir durante el año 1927 el negocio de la oficina de San Juan, alegando el demandante que tal deducción, del beneficio bruto obtenido, no fué convenida. Reclama, por tanto, un balance de $303.26 que representa el 25 por ciento de dichos $1,213.05. En la segunda causa de acción se reclama $263.49, o sea el 25 por ciento de $1,305.97 a que ascendió el beneficio neto obtenido por la oficina de San Juan, durante los meses de enero, febrero y marzo, 1928, que alega el demandante no le ha sido pagado, a pesar de sus requerimientos.

Contestó la demandada en cuanto a la primera causa de acción que si bien en el contrato no se expresa específicamente que de los beneficios brutos se deducirá suma alguna por intereses sobre capital necesario para conducir el negocio de la oficina de San Juan, implícitamente se convino así, por considerarse los mencionados intereses ''gastos incurridos para el sostenimiento y operación de la oficina de San Juan,'' a tenor de la cláusula octava del contrato *ut supra*. Alegó también contra esa primera causa de acción, que el demandante había recibido $1,180.54 que era todo cuanto tenía derecho a recibir por beneficios ''por haber dado su conformidad el demandante a que se le descontaran los intereses.''

Con respecto a la segunda causa de acción negó la demandada que enviara al demandante en 31 de marzo, 1928, una

liquidación de beneficios y gastos habidos durante los meses de enero, febrero y marzo, 1928, afirmando en contrario que "en la fecha mencionada envió al demandante una relación incompleta . . . sin que se hiciera en la mencionada relación liquidación final alguna, ya que había gastos pendientes de computar." Negó asimismo que al demandante correspondiera la suma de $326.49 por concepto de beneficios porque en los meses a que se refiere el informe que le enviara la demandada, hubo una pérdida en los negocios de la oficina de San Juan, ascendente a $694.76.

Como materia nueva constitutiva de reconvención, alegó que para el 28 de marzo, 1928, durante la vigencia del contrato y a pesar de la prohibición expresa contenida en él, el demandante, como agente de la National Cast Iron Pipe Company, vendió al señor José Rodríguez López cierta tubería de hierro y accesorios por precio de $30,200, que se negó a pagar el comprador siendo demandado por la vendedora National Cast Iron Pipe Co. ante la Corte de Distrito de los Estados Unidos para Puerto Rico y obteniendo sentencia por la suma de $5,000, de los que recibió Rossi $1,500 en concepto de comisión, que pertenecían a la demandada Porto Rico Iron Works Co. de acuerdo con el contrato entre ellos.

Que en las mismas condiciones vendió, como agente de Sterling Pump Co., una bomba a Julio Chardón, cuya orden no pasó a través de la demandada, dejando ésta de percibir su comisión, que ascendía a $500, según su mejor información y creencia.

La corte de distrito dictó sentencia declarando sin lugar la demanda de Carlos R. Rossi y sin lugar la reconvención de Porto Rico Iron Works, Inc., todo ello sin especial condenación de costas. Rossi apeló. Señala en su alegato cuatro errores. El primero dice así:

"Primero. La Corte de Distrito incurrió en error de hecho y de derecho al estimar por el resultado de la prueba y en relación con el contrato entre las partes, que no procedía la primera causa

de acción de la demanda en la que se reclama una cantidad adicional a la obtenida en concepto de compensación extraordinaria por servicios correspondientes al año 1927.''

La opinión de la corte de distrito, en lo que se relaciona con este primer error, lee así:

''La única discrepancia existente entre las partes en esta primera causa de acción es, que el demandante no está conforme con la•partida de la liquidación antes mencionada, que volvemos a copiar y lee como sigue:

''Intereses al 9 por ciento anual sobre $13,481.45,
capital necesario para conducir el negocio de
la oficina de San Juan_____ $1, 213. 05

''La Corte, después de haber apreciado en conjunto la evidencia testifical y documental presentada por ambas partes, en relación con la cláusula (8) del contrato celebrado entre las partes, declara que dicha partida es correcta y de acuerdo con lo convenido entre ambas partes; llegando la Corte a la conclusión de que la primera causa de acción de la demanda debe ser declarada sin lugar.''

El alegato de la parte apelante arroja muy poca luz y nos ha prestado muy poca ayuda para el estudio y resolución de la cuestión jurídica envuelta en su primer señalamiento. Y nos hemos visto obligados a hacer una cuidadosa búsqueda de la jurisprudencia sobre la materia, con el resultado que pasamos a exponer.

El artículo 1646 del Código Civil, edición de 1930, dispone que ''no se deberán intereses sino cuando *expresamente* se hubieren pactado.'' Es un hecho aceptado por la demandada que el contrato no contiene pacto alguno sobre intereses a deducir del beneficio bruto para conducir el negocio de la oficina de San Juan. ¿Pueden considerarse esos intereses implícitamente convenidos, en la cláusula octava del contrato, como gastos incurridos para el sostenimiento y operación de la oficina de San Juan? A nuestro juicio no. Los apartados ''A'' y ''B'' de la cláusula séptima del contrato fijan la participación del demandante en los beneficios, en un ''25 por ciento sobre los *bemeficios netos* de las órdenes

trabajadas y obtenidas por el Manager de la oficina de San Juan" y en un "10 por ciento sobre *el beneficio neto* de órdenes obtenidas por la Oficina Central, pero en las cuales el Manager de la oficina de San Juan ha prestado su cooperación . . . ," respectivamente. En la cláusula octava se reitera que "la cantidad obtenida como *beneficio neto* de la oficina de San Juan se dividirá de acuerdo con esta proporción y se sacará entonces de cada cantidad obtenida el 25 por ciento y el 10 por ciento, respectivamente, que corresponde al Manager de la Oficina de San Juan."

En *Daintrey* v. *Evans,* 148 App. Div. (N. Y.) 275, se define la frase "beneficios netos" (*net profits*). El caso es muy parecido al de autos. El causante de la demandante percibía, a virtud de un contrato oral, un sueldo de $8,000 anuales, en adición a un 5 por ciento de los beneficios netos que produjeran los departamentos que tenía a su cargo. Del beneficio bruto que obtenía, los demandados deducían, antes de computarle ese 5 por ciento, el 6 por ciento del capital invertido por ellos en los departamentos. Muerto el causante, su esposa y administradora reclamó la parte de los beneficios netos no pagada, sosteniendo que el contrato entre su esposo y los demandados no daba a éstos derecho a deducir intereses sobre el capital invertido, y que la frase "beneficios netos" no debía interpretarse en el sentido de admitir tal deducción. Apeló de una sentencia adversa, resolviéndose en definitiva que:

"No existe duda alguna de que la frase 'beneficios netos' (*net profits*) significa, en defecto de un pacto que la defina, el balance que queda después de deducir los egresos de los ingresos, *sin deducir intereses sobre el capital invertido.*" (Bastardillas nuestras.)

En *Paine* v. *Howells,* 90 N. Y. 660, se dijo:

"*No creemos que el interés sobre el capital sea un gasto a deducir, al computarse el beneficio neto.* Esos beneficios constituyen las ganancias del capital y pueden exceder o no llegar al tipo legal. Son el producto de la inversión, usándose el capital no para derivar inte-

reses sino beneficios. Los casos entre socios, a que se nos refiere, no son aplicables. Cuando todos los socios aportan igual cantidad de capital, no surge controversia sobre intereses. Sólo surge para remediar·una desigualdad, abonándose intereses a lo que es prácticamente un préstamo. Pero aquí el demandante no era un socio. Se convino expresamente que no lo sería, conviniéndose en que recibiría como compensación a sus servicios, una parte del beneficio neto, asumiendo que el capital de la oficina estaba en el negocio y que se usaría para impulsarlo y para que rindiera beneficios.'' (Bastardillas nuestras.)

En *Morrow* v. *Murphy,* 120 Mich. Rep. 204, 79 N. W. 193, demandante y demandado convinieron en que el primero recibiría por sus servicios como superintendente de la factoría del demandado, una compensación, de $1,200 anuales más el 8 por ciento de los beneficios brutos. Nada proveía el contrato sobre intereses del capital, a deducir de los beneficios. La corte refirió el caso a un *referee,* quien al computar el 8 por ciento del demandante, no dedujo antes los intereses del capital invertido por el demandado. Sostuvo el demandado que aquél erró al rehusar acreditarle intereses sobre el capital invertido por él. Y la corte resolvió que al computar los beneficios en que el empleado tiene derecho a participar, no deben concederse al principal intereses sobre el capital invertido por él, cuando éstos no han sido convenidos en el contrato.

En *Selz et al.* v. *Buel,* 105 Ill. 122, Morris Selz & Co. contrató los servicios como vendedor de Henry K. Buel durante un período de cuatro años, durante los cuales recibiría anualmente la quinta parte de los beneficios netos que produjera la sucursal de los demandados en Chicago, a la que fué asignado el demandante. Por el mismo contrato se le garantizó un mínimum de $7,500 como beneficios netos. Una de las cláusulas del contrato disponía que ''al finalizar cada uno de los años de dicho período, se determinará el beneficio bruto producido por la sucursal de Chicago, y de ese beneficio bruto *se deducirá el total de gastos y pérdidas*

habidos ese año en el negocio, y una cantidad que será igual a una quinta parte del residuo será la compensación'' del demandante (bastardillas nuestras). El caso fué referido por la corte a un *master* y éste se negó a cargar en la cuenta de gastos los intereses pagados por la sucursal de Chicago, sobre préstamos incidentales (*temporary loans*). Se señaló esto como error. Dijo la corte:

''. . . . no encontramos (en el contrato) pacto alguno que autorice tal cargo, de modo que sólo estaríamos justificados al ordenarlo, si tal fuera la costumbre general del negocio, o el uso así lo estableciera, siempre que ambas partes contratantes estuvieren informadas de ello, y hayan contratado teniéndolo así en cuenta . . . Tampoco estamos enterados de que exista el uso o la costumbre de cargar en la cuenta de gastos, los intereses pagados sobre préstamos incidentales (*temporary loans*) . . . Los apelantes estaban obligados por el contrato a suplir el capital necesario para desarrollar el negocio, y nada interesaba o concernía al apelado el si los apelantes disponían del capital necesario, o tenían que tomarlo a préstamo en todo o en parte, por plazos largos o cortos y a un tipo de interés bajo o alto.''

A la luz de la jurisprudencia citada, que debe aceptarse como guía para interpretar el contrato ahora en discusión, debe resolverse que, contrario a lo que sostiene la apelada, los intereses sobre el capital necesario para conducir el negocio de la oficina de San Juan, no pueden considerarse como gastos, y que por lo tanto su deducción, de los beneficios brutos, no fué convenida ni expresa ni implícitamente. Erró la corte inferior al sostener la validez de tales deducciones.

■ Alega la apelada, sin embargo, que satisfecha al apelante la suma de $1,180.54, nada le adeuda porque éste dió su conformidad a que se le descontara del beneficio bruto, la partida de ''intereses al 9 por ciento anual sobre $13,481.45, capital necesario para conducir el negocio de la oficina de San Juan.'' Se basa la apelada en una carta que le dirigiera

Rossi el día 21 de enero de 1928, y que en lo pertinente lee así:

"En lo que respecta a los intereses, sigo creyendo que no habiendo sido éstos cargados en la liquidación del año anterior al pasado y no habiéndose convenido que se hiciera tal cargo en el 1927, el mismo debería ser cancelado por Uds. por completo, pero lo que fué convenido con su Sr. Luis Ferré, ya que en vista de lo que hablamos el que suscribe está de acuerdo con Uds. en que los intereses formen parte del costo del material, es que revisarían Uds. el cargo de $1,213.05 que hacen Uds. a la oficina de San Juan por concepto de intereses y cuyo cargo considero excesivo en extremo. Si el volumen total de negocios de Uds., incluyendo préstamos al Banco, pasa de medio millón de dollars, y el cargo total de intereses hecho por el Banco monta a unos $5,000, según mostraron al que suscribe, lo justo es que a la oficina de San Juan venga a tocar, en relación con su volumen de negocio, ⅛ parte de ese total, a lo sumo, o sea unos $600; ya que no se ha llevado una contabilidad de cada cuenta para el cargo de intereses, me parece que es ésta la solución más justa, más aún cuando no se había convenido en hacer tal cargo con anterioridad."

Esta carta no tiene el alcance que la apelada le da. Insiste en ella el apelante en que los intereses debían eliminarse totalmente, porque no fueron cargados en la liquidación del año 1926, y porque no fueron nunca convenidos. Y si bien acepta que se le haga un descuento por concepto de intereses, rechaza por excesivo el que se le hizo en la liquidación. Como en el contrato nada se convino ni expresa ni implícitamente en cuanto a descuentos por intereses, esta carta tendría el efecto de una novación, pero como las partes no llegaron a un entendido definitivo sobre ese extremo, no puede imputarse a Rossi que diera su conformidad a que se le descontaran los intereses. Consúltese en lo que sea de aplicación a éste, el caso de *Central Pasto Viejo* v. *Aponte,* 34 D.P.R. 890.

El segundo señalamiento dice así:

"*Segundo.*—La corte inferior erró al fundar su sentencia en cuanto a la segunda causa de acción de la demanda, en que la demandada no obtuvo beneficios en las operaciones de su oficina de

San Juan realizadas durante el primer trimestre del año 1928, cuando según el contrato entre las partes lo que se ha de tener en cuenta a los fines de determinar el montante de compensación extraordinaria que por sus servicios debía percibir el demandante es el beneficio nominal calculable en relación con las órdenes de venta por él agenciadas; incurriendo asimismo en error al declarar sin lugar la demanda en su dicha segunda causa de acción fundándose en que no mediaron beneficios, si a tal apreciación llegó teniendo en cuenta la prueba ofrecida por la demandada con respecto a gastos habidos en fecha posterior a marzo 31, 1928, que fué admitida con la objeción del demandante.''

Alegó el demandante en su segunda causa de acción que la demandada le envió el 31 de marzo de 1928 una liquidación de beneficios obtenidos por la oficina de San Juan durante los meses de enero, febrero y marzo de 1928 ascendente a $2,880.41 y una liquidación de gastos durante dichos meses, ascendente a $1,574.44, resultando un beneficio neto de $1,305.97, de cuyo beneficio reclama el 25 por ciento, o sea $326.49.

Hemos visto que las alegaciones de la demandada contra esta segunda causa de acción fueron, primero, que dicha liquidación no era final, y segundo, que en los meses de enero, febrero y marzo, 1928, hubo una pérdida de $694.76 en el negocio de San Juan.

Manuel A. Mayoral, secretario y jefe de la oficina de la demandada, declaró, que en la liquidación enviada a Rossi no se incluyeron ciertos gastos de teléfono, local, sueldos y otros en que incurriera la oficina de San Juan durante los meses de marzo y abril, que subían a $380. Como la reclamación de Rossi en esta segunda causa de acción está limitada a los meses de enero, febrero y marzo, 1928, creemos que la demandada no tiene derecho a deducir de los beneficios habidos en esos meses, gastos correspondientes al de abril. De modo que, de los $380 a que ascienden esos gastos, sólo $195.40 que corresponden al mes de marzo por arrendamiento del local que ocupaba la oficina de San Juan son deducibles de los beneficios brutos. Así que la partida de gas-

tos que aparece en la liquidación enviada por la demandada a Rossi en 31 de marzo de 1928 debe aumentarse en $195.40 para que, en vez de $1,574.44 sea de $1,769.84.

También declaró el señor Mayoral que a los efectos de hacer la liquidación final, le cargó a la oficina de San Juan $275.23 por intereses sobre el capital necesario para la operación de la oficina de San Juan durante el período de enero 1 a abril 11, 1928; que dedujo de los beneficios una bonificación de $158.51 que hizo a Enrique Báez, y $1,185.40 que perdió el negocio en una cuenta de Fortuño Sellés. Es claro que, sumando estas tres partidas a la de $1,574.44 y a la de $380, el negocio hubiera arrojado durante los meses de enero, febrero y marzo de 1928, una pérdida de $693.17 (y no de $694.76, como sostiene la demandada), pues los beneficios brutos sólo ascendieron a $2,880.41. Pero como la partida de intereses no es deducible por los fundamentos aducidos al estudiar el primer error y la bonificación a Báez y pérdida en la cuenta de Sellés tampoco lo son, por las razones que se dirán, resulta que el demandante tiene derecho a percibir, por esta segunda causa de acción, la suma de $277.64, que es el 25 por ciento de $1,110.57, diferencia entre $2,880.41 (beneficio bruto) y $1,769.84 (gastos).

Ni la partida de $158.51 ni la de $1,185.40 son deducibles de los beneficios, porque en el contrato Rossi no convino en compartir con la demandada las pérdidas que hubiera en el negocio de San Juan. El contrato entre las partes no era un contrato de sociedad por el cual el Manager señor Rossi estuviese obligado a participar en las pérdidas que pudiera haber en el negocio de su principal. Si la intención de las partes hubiera sido otra, en la misma forma que acordaron la distribución de los beneficios, hubieran pactado la de las pérdidas. La cláusula primera del contrato entre ellos, dice que "Los Principales abrirán y sostendrán abierta una oficina sucursal en la ciudad de San Juan que se dedicará" etc. Fué la demandada la que se comprometió a abrir dicha oficina

y no ella y Rossi. Tanto los beneficios como las pérdidas que hubiera, los recibiría y sufriría, en su caso, la demandada. De los beneficios, tenía que conceder algunos a quien la tuviera a su cargo, y al efecto, concedió un 25 por ciento y un 10 por ciento bajo ciertas circunstancias, mas no se dijo nada de las pérdidas, que las arrostra siempre el dueño del negocio, salvo pacto en contrario.

En *Mouland* v. *Harty*, 120 Misc. (N. Y.), 47, se expresó así la corte:

"Hubo ventas en las que sufrió pérdidas el patrono, quien sostiene que esas pérdidas deben deducirse de los beneficios derivados de otras ventas. La corte inferior aceptó esa interpretación del contrato, y como las pérdidas excedieron a los beneficios, dictó sentencia a favor del demandado. No estamos de acuerdo con esa interpretación del contrato. El contrato no hace referencia a pérdidas; y decididamente no es uno de sociedad o empresa común (*joint adventure*). Una participación de beneficios como sueldo (que es el caso aquí) no acarrea, a menos que así se estipule expresamente, responsabilidad por pérdidas. Nuestro punto de vista es que cualesquiera beneficios que produjeran las ventas realizadas por los demandantes, constituían sueldo adicional; no estaban obligados ni implícita ni expresamente a participar en las pérdidas."

Véase también *McFarland* v. *Gillioz*, 37 S. W. (2d) 911.

La demandada cita en apoyo de su contención el siguiente párrafo de 2 Corpus Juris, pág. 783, párrafo 448:

"448 (3).—Por los términos del contrato de agencia o de otro modo, la cantidad adeudada a un agente puede ser objeto de confiscación o deducciones por razones varias ajenas al fraude o mala conducta, como por ejemplo, cuando el principal incurre en pérdidas debidas al incumplimiento de un cliente buscado por el agente."

A renglón seguido cita y transcribe como "un caso idéntico al presente," el de *A. B. Frank Co.* v. *Waldrop* (Tex. Civ. A.) 71 S. W. 298, reportado en parte también, al calce de la nota de Corpus Juris, supra, como sigue:

"Cuando el contrato bajo el cual un agente asumió en determinada ciudad la administración de los negocios de su principal por

cierto salario fijo y un por ciento de los beneficios netos, no garantizaba que el agente indemnizaría cualquier pérdida debida al incumplimiento de los clientes en el pago de sus cuentas, dichas pérdidas no pueden deducirse del salario del agente, si bien pueden tomarse en consideración al computarse los beneficios netos.''

Si la demandada, en vez de limitarse a leer lo que reporta Corpus Juris de dicho caso, lo hubiera leído en su totalidad, se hubiera encontrado con que el contrato entre Waldrop y A. B. Frank Co. disponía que:

''. . . todas las pérdidas causadas por cuentas incobrables y pérdidas en mercancías facturadas desde la sucursal en el condado de González, *deberán deducirse del beneficio bruto,* al calcularse el 5% adicional.'' (Bastardillas nuestras.)

Es obvio que el caso resulta completamente distinto al de autos.

La corte sentenciadora incurrió, a nuestro juicio, en el segundo error que se le imputa.

Creemos innecesaria una discusión del tercero y cuarto señalamientos.

La corte inferior declaró sin lugar las dos causas de reconvención alegadas por la demandada en su contestación, y ésta no apeló de ese pronunciamiento, por lo que quedó consentido.

*Por las razones expuestas la sentencia apelada debe ser revocada y en su lugar dictarse otra condenando a la demandada a pagar al demandante-apelante la suma de $580.90, o sea $303.26 por la primera causa de acción y $277.64 por la segunda, con intereses legales sobre dicha suma desde septiembre 29 de 1930 hasta su completo pago, más las costas, gastos y desembolsos originados por esta acción tanto en la corte inferior como en esta apelación.*

El Juez Asociado Señor Córdova Dávila no intervino.